## In re Voluntary Assignment of James P. Bailey. Appeal of W. J. Shaw, Assignee.

*Auditor—Auditor's findings of fact—Fraudulent judgment.*

An auditor's findings of fact, confirmed by the court below, have all the force of a verdict of a jury. The Supreme Court will not reverse an auditor's findings, although the evidence is all contradicted, that a judgment paid by an assignee for creditors was collusive, and that the assignee had knowledge of its fraudulent character, if based upon sufficient evidence and confirmed by the court below.

*Assignment for creditors—Sale by assignee—Surcharge.*

An assignee for creditors is properly surcharged with the value of stock

belonging to the assigned estate sold by him for a nominal sum, where it appears that the stock had a substantial value, and that it was sold without proper notice to the public, and without conference with the creditors.

Argued Nov. 1, 1898. Appeal, No. 40, Oct. T., 1898, by W. J. Shaw, from order of C. P. No. 3, Allegheny Co., Nov. T., 1893, No. 177, dismissing exceptions to auditor's report. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL DEAN and FELL, JJ. Affirmed.

Exceptions to report of S. D. Mitchell, Esq., auditor.

W. J. Shaw, assignee for creditors of James P. Bailey, an architect, claimed credit in his account for a judgment paid by him amounting to $3,036.78, confessed by the assignor to B. Donovan; he also claimed credit for $2,950, being decrease in the sale of certain stock valued in the appraisement at $3,000, and sold to B. Donovan for $50.00. The auditor disallowed both of these claims. On exceptions to the auditor's report the court recommitted the account to the auditor with directions to take further testimony.

The auditor filed the following supplemental report.

B. Donovan testified that Bailey was indebted to him at the time of the execution and entry of said judgment note as follows, viz:

(a) Balance due on first house built by Bailey, and situated on Highland avenue, . . . $   61

(b) Balance due on notes given for the brickwork on two other houses on Highland avenue, .   500

(c) Balance due on book account, . . .   600

(d) Amount due on settlement for land in Schenley Park district, at which settlement Bailey received more than his share of the proceeds the sum of . . . . . .   500

(e) Balance of loan made to Bailey (by check for $350) on May 9, 1893, . . .   300

(f) Loan made to Bailey (by check) on March 20, 1891, . . . . . . .   150

Amount carried forward   .   .   $2.111.

|  | | |
|---|---|---|
| Amount brought forward . . | $2,111 | |
| (g) Work upon furnace in Bailey's house at Se-wickley, . . . . . . . | 25 | |
| (h) Rental for one year on Schenley Park house, which Bailey occupied for that time and for the payment of which there was no agreement between Bailey and Donovan, and which both testified was a fair rental, . . . | 600 | |
| Total, . . . . . . | $2,736 | |

Mr. Donovan only swore to the truth and accuracy of the above items of claim. Mr. Bailey testified that there were but three items, which he could recall, designated by the auditor as items (d), (g) and (h); he was unable to recall the other items.

With respect to item (b), Mr. Donovan testified that "I had" (those notes) "and I had the $500 note up until some time ago, and it got mislaid, and I looked for it at different times, frequently, but failed to find it."

With respect to item (d), Mr. Donovan testified that "in the Schenley park transaction, when we sold that and received payment there, Bailey got $500 of my money at that time, and he said to me he would pay it again or make it good again. Well, that remained unpaid at the time he gave me this judgment."

With respect to item (h), Mr. Donovan testified that "Bailey occupied that house and place out there for one year, and I was entitled to a rental there for my interest in it; I considered it worth about $600. . . . There was something said about his living on the place, occupying it there, and, something said about what he would pay, but there was no price just fixed at the time." He further testified that $600 would be a fair rental value for the half interest in that property for the time he occupied it, because "it would be only about 4 per cent on the investment."

When the money due upon the judgment against Bailey was paid on May 23, 1894, Donovan on the same day drew a check against that sum for $2,325, payable to cash and "loaned that to Bailey, most of it." Mr. Donovan explained that "Bailey came to me at that time and he stated that the majority of his

creditors had signified their willingness to accept 75 per cent of his indebtedness, and release him from all further liabilities on their accounts, and he said to me if I would loan him about $2,000 . . . . that that would enable him to pay this 75 per cent to these creditors and leave the tin plate and his farm, and the tin plate plant to be operated at that time—he could raise some money to operate the plant." The money was passed over to Bailey, who gave his notes therefor; the one for $1,300, dated May 30, 1894, payable one day after date; the other for $700, dated June 2, 1894, payable in four months. These notes were offered in evidence.

Bailey testified that the $2,300 was borrowed from Donovan for the purpose above specified; but that the contemplated settlement with his creditors upon the 75 per cent basis was not consummated. But Bailey did not return the $2,300 to Donovan. He testified that $800 of that sum went to the purchase of the Fair Oaks farm by his brother, W. S. Bailey. This was appraised at the value of $4,000 and was subject to a mortgage of $3,200 upon it. He said: "When the money was not used in that way (i. e. in effecting the settlement with creditors) and no bid above the mortgage could be secured on the farm, I sent for my brother, W. S., of Washington, and I wanted him to buy the farm, so that I could have a place for my family. He went down and looked at it and he would not agree to put up anything in addition to the mortgage. I told him rather than see it sold at the face of the mortgage I would give him $800; that was money I had borrowed from Mr. Donovan."

It is a matter of some delicacy for the auditor to determine the true facts in the face of this testimony. Mr. Donovan's testimony, given before the auditor on May 20, 1895, at which time he was a most unwilling witness, was to the effect that " Bailey owed me because I was an individual indorser on these notes, and Lowe, he was a stockholder at that time. The company was responsible for the payment of these notes, and got me to go on as individual indorser and obtained money from me at different times to make partial payments on these notes." The indebtedness of the tin plate company upon these notes was treated by Donovan as that of Bailey, because Bailey was indorser upon the notes; and Donovan explicitly testified that the entire indebtedness of the tin plate company and of Bailey

together due him on August 10, 1893, was "the amount I had the judgment for;" and that the tin plate company and Bailey together did not owe him more than $2,900. Beyond that he then refused positively to go.

On June 16, 1896, Mr. Donovan testified as follows, viz: "Q. You say, Mr. Donovan, that the judgment was to cover indebtedness of Mr. Bailey to yourself, and also to protect you on indorsements for the Alliquippa Tin Plate Company? A. Yes, sir. Q. Now, if Mr. Bailey was indebted to you $2,736, how much protection did that leave you for indorsements for the Alliquippa Tin Plate Company? A. My answer is this, that it would not be very much protection between the $2,700 and the $2,900, but I looked on the tin plate stock as being worth something and some protection to me."

On May 20, 1895, in answer to the inquiry, "What was the entire indebtedness of the tin plate company and Mr. Bailey together to yourself on August 10, 1893?" Donovan reluctantly answered: "The amount I had the judgment for, viz: $2,900." On June 16, 1896, if his testimony as to the consideration of the judgment be true, he would have to answer the above question by the statement that the amount of indebtedness of the tin plate company and of Bailey to him was slightly in excess of $5,000. This is too great a discrepancy. These facts are rendered the more peculiar from the fact that after the auditor completed his original report, counsel representing Donovan made an oral application to the auditor to open the case and allow Donovan to prove a claim of about $300 against the estate of Bailey, which was an alleged balance due on account of all the transactions between Bailey and Donovan, covering a number of years; and that upon subsequent hearing, ordered by this court, nothing was said about such balance, and the figures proved before the auditor do not show such a balance. To reach such balance it would have been necessary to investigate all the transactions between Bailey and Donovan, which was done. The most that Donovan claimed to hold against Bailey was $2,736, covered as he alleges, by the judgment, and he testified to no sum of $300, balance due upon all their transactions. It was a questionable act for Donovan to give back to Bailey the $2,300, on May 23, 1894, the very day that the judgment against Bailey was paid and satisfied. What difference

does it make that Bailey shortly afterwards gave his notes for $2,000 of that money? Donovan had been secured by preference by Bailey before the appointment of an assignee for the benefit of creditors. It is surprising that he should, upon being paid in full, hand that money back to Bailey and take merely the notes of an insolvent to secure the loan again. Such things are unusual, however close the ties of business or of friendship.

In this connection, it is worth while to recall the fact that Donovan has testified that Bailey prepared the judgment note and handed it to him (Donovan) and that he (Donovan) did not then know how much was owing from Bailey; and that Bailey testified that of the various items of indebtedness testified to by Donovan he could recall but three (designated by the auditor elsewhere), but that he had no doubt the others were correct if Donovan said so.

On May 23, 1894, when the judgment was paid, the transaction was effected in this way: R. A. Frank, the purchaser of the lot at Sewickley, paid thereof the sum of $7,800. He drew three checks as follows: (1) A check to W. J. Shaw, assignee, for $3,076.75 (which was immediately indorsed to B. Donovan), the supposed amount of interest and principal due on the judgment against Bailey; (2) a check for the amount of street liens and municipal assessments upon the lot; (3) a check to W. J. Shaw, assignee, for the balance.

Mr. Shaw testified that "in their figuring a mistake was made in Mr. Donovan's check: I told them I was $40.00 short; discovered that they had paid Mr. Donovan $40.00 too much. Then Mr. Donovan gave me check marked exhibit 8, which balanced the whole transaction, and I deposited the check in bank." This check was offered in evidence. It is true that the assignee in his account claims credit for the sum of $3,036.78, as the amount paid on the judgment. The auditor in verifying the calculation, when preparing his original report discovered the error of $40.00 over-payment to Donovan. The fact that there was such over-payment, and that the total amount agreed to the very cent with the calculation submitted by counsel, necessarily weighed heavily against Donovan and Bailey. Mr. Shaw testified that Mr. Frank, Mr. Donaldson, Mr. Slack and Mr. Donovan figured out the amount of principal and interest due on the judgment, when the error of $40.00 was made.

It will be remembered that on August 10, 1893, when the judgment was entered, the indebtedness of the tin plate company to the First National Bank of Allegheny was evidenced by two notes; the one for $1,700 and the other for $1,200; which together, amount to $2,900. The circumstance that this sum was the same as the amount of the judgment, had additional weight with the auditor in concluding that the judgment was security for the notes. It has been suggested that in surcharging the accountant in the sum of $2,950, loss in sale of tin plate stock, and in the sum of $2,300, on account of payment of the judgment given by Bailey to Donovan, the auditor has made a double surcharge. It will be remembered that the assignee in making sale of the stock gave none of the creditors except Donovan personal notice of the intended sale. Donovan received such notice from Bailey and attended the sale. Notice was published three times in the "Chronicle Telegraph." Counsel for the assignee strongly contend that the stock was worthless. A committee of the creditors examined the tin plate plant and concluded that the sum of $13,000 would be required to replace it and that at a public sale the plant would sell for at least three or four thousand dollars. Even after the stock of Bailey was sold to Donovan for $50.00, a proposition was made by Bailey and Shaw to Bailey's creditors to have the Alliquippa Tin Plate Company give the creditors a mortgage upon the tin plate plant in the sum of $15,000 to secure their claims against Bailey and to allow the money in the hands of the assignee to go to operating the plant. The plant, therefore, they considered had value with money to run it. If this was not their honest conviction, why make such proposition to creditors? The stock was sold during a period of the greatest business depression—on August 10, 1894—exactly one year after the date of the assignment to Shaw. Nothing then could be sold for anything like its full value. Under the circumstances it seems to the auditor that if Shaw was unable then to effect a more advantageous sale of the stock than he did, it was his duty to hold it as an asset of the estate, in the hope of securing a better price at a future time, in place of sacrificing then, to effect a sale. Nothing was gained by the sale; and undoubtedly the sale was made under suspicious circumstances. Delay would not have been to the disadvantage of the assigned

estate, because the bank would have brought suit against the indorsers (Bailey, Lowe and Donovan) to recover against them, and their judgment would have received a dividend upon this distribution.   No evidence has been introduced to show whether the note was protested in order to fix the liability of the indorsers, but it is a reasonable supposition that it was.   Donovan, however, did not pay the note.   It was paid by Bailey's brothers.

For these reasons it seems to the auditor that his findings of fact, as embraced in the original report, should not be changed. Upon reflection, however, it seems more equitable not to surcharge the full amount of $2,950, loss on sale of tin plate stock.

| | |
|---|---:|
| The balance due the estate is the sum of   .   . | $3,715 88 |
| "   surcharge on the seventh exception is   . | 28 70 |
| "          "      "   "   ninth exception is   .   . | 2,300 00 |
| "          "   in lieu of second to sixth exceptions is   .   .   .   . | 976 38 |
| Total   .   .   .   .   .   . | $7,020 96 |

This sum of $7,020.96 would pay forty-four per cent upon all the claims against the estate and the auditor has, therefore, surcharged the accountant with fifty-six per cent of the sum of $2,950, which is the sum of $1,652, making the total amount for distribution the sum of $8,672.   Net balance for distribution, after deducting auditor's fee and costs, $7,883.80.

This net balance produces a dividend of .5873 per cent of the total amount of the claims against James P. Bailey proved before the auditor, and this dividend upon each claim is made by the auditor.

Deducting from $7,883.80 the sum of $500, awarded to W. K. Jennings, Esq., counsel for exceptants, who has acted for all the creditors, leaves the sum of $7,383.80 for distribution among the creditors, after each creditor has paid his proportionate share of Mr. Jennings's fee.   This produces a percentage of fifty-five per cent as a dividend upon the claims.

On exceptions to the supplemental report, KENNEDY, P. J., filed the following opinion:

When this matter was before the court upon exceptions to the original report of the auditor, after argument, the court

deemed it advisable to recommit it to the auditor for the purpose of taking the testimony of J. P. Bailey and B. Donovan in explanation of the consideration for the judgment, at No. 170, October term, 1893. The testimony of these parties was taken by the auditor and a supplemental report thereon made by him. No new exceptions were filed to the supplemental report, but, by consent, the exceptions filed to the original report were treated also as exceptions to the supplemental report, and a second agreement was had thereon, at both agreements, counsel for exceptants to the reports conceded that the second and fourth exceptions could not be sustained and must be dismissed by the court. The fifth exception was disposed of by the reference of the matter back to the auditor, as before stated. The only exceptions insisted upon by counsel for exceptants, in their arguments, were the first and third.

As to the third exception, viz : that relating to the surcharge of the accountant by the auditor, of the amount of the judgment, at No. 170, October term, 1893, D. S. B., the auditor has found that this judgment was collusive between the parties, of which collusion the assignee had sufficient notice to put him upon inquiry. The testimony taken upon the original hearing, as well as that taken upon the reference of the matter back to him, is quite sufficient to sustain the conclusion of the auditor that the assignee must be surcharged with the amount of the judgment, and we can find no reason for reversing him as sustaining this exception.

The only remaining exception to be considered is the first, and it is to the effect that the auditor erred in surcharging the assignee with an amount of loss in the sale of the capital stock of the "Alliquippa Tin Plate Company." This stock was sold for a nominal sum by the assignee, and his counsel claims it was worthless. A short time prior to the sale, Bailey and the assignee made an offer to the creditors of seventy-five per cent upon their respective claims, accompanying which offer was a statement showing that they had in cash $2,300, which had been handed back by Donovan, after its reception by him, on his judgment found to be collusive, and this stock in the tin plate company estimated in the statement at $3,000 along with other assets, as security for or means of carrying out the offer. This offer was rejected and shortly thereafter the stock was

sold at public auction, it is true, but there does not seem to have been reasonably proper notice of the sale; nor was there any conference with creditors with regard thereto, and the same was knocked down to Donovan on a bid, which he at the time considered a joke.

Not long after the sale Bailey made another proposition to his creditors, viz: to give them a mortgage upon the property of the tin plate company in the sum of $15,000 to secure their claims, and to this offer the assignee was also a party. Moreover, this stock was, at the time of the assignment, duly appraised at the sum of $3,000 and the assignee in his account filed charged commissions on that amount as the value or proceeds of the stock, which commissions he received. Under the circumstances the assignee cannot now say the stock was worthless, and we think the auditor was right in surcharging therefor. This surcharge is modified and reduced by the auditor in his supplemental report, which modification and reduction we think correctly made. The exception is not sustained.

We are of opinion that all of the exceptions to the auditor's report must be dismissed and that said report, as modified by the supplemental report and the schedule of distribution attached thereto, shall be confirmed, absolutely.

And now, to wit: October 16, A. D. 1896, it is hereby ordered, adjudged and decreed that the exceptions filed to the auditor's report in above matter be dismissed and that the said report of the auditor as modified by his supplemental report and the schedule of distribution thereto attached be confirmed absolutely, and it is further ordered that the auditor's fee and costs amounting to $788.20 be paid forthwith.

*Errors assigned* were in overruling exceptions to auditor's report.

*George R. Wallace*, for appellant.

*W. K. Jennings*, with him *Henry G. Wasson*, for appellee.

PER CURIAM, November 14, 1898:

We are convinced that the conclusions of fact found by the auditor in the court below were justified by the evidence, and as the report was confirmed by the court they have all the force

of the verdict of a jury. We find no error in the conclusions of law contained in the report, and we sustain the court below in dismissing the exceptions. The assignments of error are dismissed.

Decree affirmed and appeal dismissed at the cost of the appellant.